UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

ROBERT PAULY and SANDRA
PAULY,

     Plaintiffs,

v.                             Case No.:  2:23-cv-259-SPC-KCD

HARTFORD INSURANCE
COMPANY OF THE MIDWEST,

     Defendant.

_____/

## ORDER

Before the Court is Defendant Hartford Insurance Company of the Midwest's Motion to Quash Subpoena for Deposition (Doc. 31) and Third-Party Movant Tarik Makkaoui's Motion to Quash Subpoena (Doc. 32).[1] Plaintiffs responded (Doc. 34), making the matter ripe. For the reasons below, the motions are granted in part and denied in part.

## I. Background

Plaintiffs Robert and Sandra Pauly allege they submitted an insurance claim for hurricane damage that Defendant Hartford will not pay. To recover the funds reportedly owed, Plaintiffs sue for breach of contract. (Doc. 5.) But

---

[1] Unless otherwise indicated, all internal quotation marks, citations, and alterations have been omitted in this and later citations.

the pending motions largely rest on facts and events that took place before the suit.

After Plaintiffs submitted their insurance claim, a Hartford representative inspected the damage and prepared an estimate. (Doc. 31 at 2.) A few days later, Hartford sent Plaintiffs a letter stating: "we are unable to pay your claim since the amount of the damages are below your deductible." (Doc. 31-1 at 1.) Plaintiffs responded by hiring a public adjuster and rendering a much larger damage calculation with an engineering report. (Doc. 31 at 3.) Hartford then retained its own engineering expert, Third-Party Makkaoui, to re-inspect the property. (*Id.*) Makkaoui compiled his findings in a report, which Hartford sent to Plaintiffs along with a claim denial letter. (*Id.*)

Plaintiffs now seek to depose Makkaoui as part of discovery. But Hartford objects, stating it does not plan to rely on his expert testimony. (*Id.* at 4.) Rather, according to Hartford, Makkaoui is a consulting expert who is not subject to discovery under the Federal Rules of Civil Procedure. (*Id.* at 6.) Makkaoui objects on these grounds as well, asserting he is a "consulting expert." (Doc. 32 at 1.) Makkaoui also claims the subpoena will "subject [him] to an undue burden" because it requests information "within the control of [his] former employer." (*Id.*)

## II. Legal Standard

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any . . . claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). The typical mechanism to obtain discovery from a nonparty is a subpoena. *See* Fed. R. Civ. P. 45. Under Rule 45, a party may subpoena documents in a nonparty's possession and require a nonparty to testify at a deposition. Fed. R. Civ. P. 45(a)(1).

What objections can be raised against a Rule 45 subpoena depends on who is making them. The target of a subpoena can generally move to quash or modify it on relevance, cost, or proportionality grounds. A party objecting to third-party discovery, meanwhile, only has standing "if [he] alleges a personal right or privilege." *Auto-Owners Ins. Co. v. Se. Floating Docks, Inc.*, 231 F.R.D. 426, 429 (M.D. Fla. 2005). "This [rule] excludes challenges on the grounds of oppression and undue burden" placed on the subpoena target. *Scoma Chiropractic, P.A. v. Dental Equities, LLC*, No. 2:16-CV-41-JLB-MRM, 2022 WL 971888, at *3 (M.D. Fla. Mar. 31, 2022). If a party objects to a Rule 45 subpoena, he must generally demonstrate that compliance would require the disclosure of privileged or protected information. *Fadalla v. Life Auto. Prod., Inc.*, 258 F.R.D. 501, 504 (M.D. Fla. 2007).

Also relevant here is Federal Rule of Civil Procedure 26, which gives particular treatment to expert discovery. It provides that testifying experts are

subject to discovery. Fed. R. Civ. P. 26(b)(4)(A). ("A party may depose any person who has been identified as an expert whose opinions may be presented at trial.") But consulting experts are generally not:

> Ordinarily, a party may not, by interrogatories or deposition, discover facts known or opinions held by an expert who has been retained or specially employed by another party in anticipation of litigation or to prepare for trial and who is not expected to be called as a witness at trial. But a party may do so only:
>
> (i) as provided in Rule 35(b); or
>
> (ii) on showing exceptional circumstances under which it is impracticable for the party to obtain facts or opinions on the same subject by other means.

Fed. R. Civ. P. 26(b)(4)(D). The objecting party "has the burden to show that Rule 26(b)(4)(D) applies and protects [the expert] from disclosure. Then the burden [shifts] to [other party] to show that exceptional circumstances exist under which it is impracticable for [it] to obtain facts or opinions on the same subject by other means." *Elite Mitigation Servs., LLC v. Westchester Surplus Lines Ins. Co.*, No. 5:19-CV-381-TKW/MJF, 2020 WL 6127140, at *3 (N.D. Fla. Apr. 6, 2020). "A party seeking disclosure under Rule 26(b)(4)(B) carries a heavy burden in demonstrating the existence of exceptional circumstances." *Caribbean I Owners' Ass'n, Inc. v. Great Am. Ins. Co. of New York*, No. CIV.A. 07-00829-KD-B, 2009 WL 499500, at *2 (S.D. Ala. Feb. 20, 2009).

### III. Discussion

There is no dispute that Hartford is not offering Makkaoui as a trial expert. Thus, according to Hartford, he qualifies as a consulting expert because his "inspection was conducted in anticipation of litigation." (Doc. 31 at 5.) And this means his opinions are "protected by the work product privilege" in Rule 26(b)(4)(D). (*Id.*)

Plaintiffs, for their part, say Makkaoui is "a fact witness" subject to discovery because he was not retained in anticipation of litigation. (Doc. 34 at 6.) They note that Makkaoui's report was "the very basis of the insurance company's coverage analysis." (*Id.* at 2.) Thus, "[w]ithout question, Makkaoui was never an expert contacted for purposes of only consulting with" Hartford. (*Id.* at 3.)

At its core, this dispute boils down to whether Makkaoui was retained and inspected Plaintiffs' property "in anticipation of litigation." If so, his observations and opinions are protected under Rule 26(b)(4)(D). If not, he is subject to discovery like any other witness. *See Marlin VI Princess Deep Sea Fishing, LLC v. N. Assurance Co. of Am.*, No. 8:13-CV-1812-T-17MAP, 2014 WL 12629776, at *2 (M.D. Fla. Jan. 6, 2014) ("[T]he rule does not address itself to the expert whose information was not acquired in preparation for trial but rather because he was an actor or viewer with respect to transactions or

occurrences that are part of the matter of the lawsuit. Such an expert should be treated as an ordinary witness.").

The general approach for determining whether something was prepared "in anticipation of litigation" is whether it would have been obtained "because of the prospect of litigation, and not in the regular course of business." *Carver v. Allstate Ins. Co.*, 94 F.R.D. 131, 134 (S.D. Ga. 1982). Applying this standard in the context of insurance claims is somewhat complex because investigations occur in the ordinary course of business and are not necessarily conducted in anticipation of litigation. *See, e.g.*, *Gables Condo. & Club Ass'n, Inc. v. Empire Indem. Ins. Co.*, No. 18-23659-CIV, 2019 WL 1317824, at *5 (S.D. Fla. Mar. 22, 2019);

Recognizing this practical reality, many courts, including several in the Middle District of Florida, use a rebuttable presumption that materials created "prior to a claim's denial were not created in anticipation of litigation, and conversely, those created after were." *See Cape Christian Fellowship, Inc. v. Landmark Am. Ins. Co.*, No. 2:20-CV-410-JLB-NPM, 2021 WL 1293611, at *4 (M.D. Fla. Apr. 7, 2021). This distinction makes sense. An insurer must investigate whether coverage is available in the ordinary course of business. And its only after deciding to deny a claim that litigation elevates beyond an "inchoate possibility." *Carver*, 94 F.R.D. at 135.

An insurance carrier may rebut this presumption by "specific evidentiary proof of objective facts, that a reasonable anticipation of litigation existed." *Cape Christian Fellowship*, 2021 WL 1293611, at *4. Whether this showing has been made is determined case-by-case. "But generally, the insurer must demonstrate the connection to possible litigation concretely enough to assure a court that it is not simply trying to immunize from discovery its routine claims processing material." *Id.* Courts have found the relevant cutoff should be the moment at which the insurer denied coverage. *See, e.g.*, *Pete Rinaldi's Fast Foods, Inc. v. Great Am. Ins. Companies*, 123 F.R.D. 198, 202 (M.D.N.C. 1988) ("Normally, only after the insurance company makes a decision with respect to the claim, will it be possible for there to arise a reasonable threat of litigation so that information gathered thereafter might be said to be acquired in anticipation of litigation.").

Applying these standards here, Hartford has not met its burden. Everything suggests that Makkaoui was retained to investigate Plaintiffs' claim and not in anticipation of litigation. The most obvious fact in support of this conclusion is that Makkaoui's report was provided to Plaintiffs along with the claim denial. If Hartford intended to preserve Makkaoui's investigation under Rule 26, its decision to disclose his report is inexplicable. *See Westfield Ins. Co. v. Carpenter Reclamation, Inc.*, 301 F.R.D. 235, 251 (S.D.W. Va. 2014) ("The opinions and information obtained by experts retained as consultants by

7

insurance companies in the ordinary course of investigating potential liability claims are not protected."); *Gables Condo. & Club Ass'n, Inc. v. Empire Indem. Ins. Co.*, No. 18-23659-CIV, 2019 WL 1317824, at *5 (S.D. Fla. Mar. 22, 2019) (characterizing non-party consultant as an ordinary fact witness "for purposes of the documents it created for submission to [the insurance company] in connection with [the insured's] submission of its hurricane damage claim," but as a non-testifying expert entitled to work product protection when "retained to help prepare for litigation.");

Despite admitting that Makkaoui's inspection "was conducted as part of [its] ongoing claims investigation," Hartford says litigation was "imminent" because it had partially denied Plaintiffs' claim in its initial letter. (Doc. 31 at 5.) The Court is not convinced. Hartford's letter did not use the term "deny" or anything similar. Rather, Hartford told Plaintiffs that their claim remained open and was subject to review if more information was provided:

> Please notify us immediately if you receive a supplemental estimate which causes your total damages to exceed your deductible. At that time, we will continue with our coverage investigation in order to determine whether the damages are covered under your Policy.
>
> If there is any additional information or documentation that you would like us to consider, please send this information to my attention immediately. The Hartford reserves the right to supplement and/or to amend its position should facts and circumstances indicate the need to do so in connection with your claim.

(Doc. 31-1 at 1.) The Court is hard-pressed to find that Hartford was anticipating litigation given its invitation to reassess the claim. Further, "to the extent there is any ambiguity as to whether [a consultant] was acting as a retained, non-testifying expert or as a fact witness, courts favor disclosure of the information." *U.S. ex rel. Civ. Const. Techs., Inc. v. Hanover Ins. Co.*, No. 6:13-MC-42-ORL-18TBS, 2013 WL 1810817, at *4 (M.D. Fla. Apr. 29, 2013).

For these reasons, the Court applies the rebuttable presumption that the work Makkaoui completed before Hartford denied Plaintiffs' claim was not done in anticipation of litigation. Makkaoui is thus subject to discovery for the period before February 16, 2023 (the date of Hartford's denial letter). Any evidence stemming from then on, however, is protected under Fed. R. Civ. P. 26(b)(4)(D). Plaintiffs have not carried their burden of proving exceptional circumstances that would warrant inquiry into Makkaoui's post-denial conduct. *See, e.g.*, *Greater Hall Temple Church of God in Christ, Inc. v. S. Mut. Church Ins. Co.*, No. 2:17-CV-111, 2021 WL 8533939, at *6 (S.D. Ga. Apr. 1, 2021) (declining to allow discovery of consulting expert where "Plaintiff was fully able to obtain all of the same facts and opinions by engaging its own consulting expert").[2]

---

[2] Hartford similarly seeks a protective order on grounds its "interest in maintaining its privilege outweighs Plaintiff's interest in conducting [Makkaoui's] deposition." (Doc. 31 at 8.) Since Makkaoui's report is not privileged, the Court finds that the "balance of interests" instead warrants allowing his deposition under the parameters outlined. *See Empire of Carolina, Inc. v. Mackle*, 108 F.R.D. 323, 326 (S.D. Fla. 1985) ("[A] party seeking to avoid

That does not end the matter, however, as Makkaoui separately objects to the subpoena as burdensome. (Doc. 32 at 4-5.) He claims "[a]ll the file documentation used to prepare the Report is in the exclusive possession and control of" his former employer. (*Id.* at 5.) Thus, "[i]t is unduly burdensome for [him] to prepare for and appear at a deposition concerning the Report when he has no information or documentation on the Report in his possession or control." (*Id.*)

The Court is partially persuaded. As much as the subpoena requires Makkaoui to produce documents, it is quashed. The only evidence before the Court is that Makkaoui's former employer holds those materials. Makkaoui should not have to undertake the task of compiling records possessed by a third-party—that's Plaintiffs' job. *See Jordan v. Comm'r, Mississippi Dep't of Corr.*, 947 F.3d 1322, 1337 (11th Cir. 2020) (noting that courts take particular care to avoid unduly burdening nonparties).

But the Court denies Makkaoui's request to the extent he seeks relief from the deposition. As Plaintiffs note, Hartford relied on Makkaoui's report when denying their claim. Thus, they should be allowed "to inquire fully as to what witness Makkaoui saw at the property that led him to conclude that damages [at the property] were [or were not] caused by wind." (Doc. 34 at 11.)

---

disclosure of materials by protective order bears a heavy burden of demonstrating that disclosure will work a clearly defined and very serious injury.").

Makkaoui argues that "[t]here are clearly less burdensome means of obtaining the information requested." (Doc. 32 at 5.) Not so. Plaintiffs have identified several questions that seemingly cannot be answered by the written report or anyone but Makkaoui. (Doc. 34 at 8-14.) On balance, the burden placed on Makkaoui to attend a Zoom deposition does not overcome Plaintiffs' interest in this discovery. *See Fadalla*, 258 F.R.D. at 504 (stating that "[i]n determining whether [a subpoena is] due to be quashed, this Court must balance [the] need for discovery against the burden imposed upon [the party resisting discovery], along with their interest in keeping the requested information confidential").

One last issue. Makkaoui asserts that, should he be deposed, Plaintiffs must pay for his time. (Doc. 32 at 5.) He asks for a flat fee of $4,000. (Doc. 32, Ex. D.) Plaintiffs agree to compensate Makkaoui, but find his request unreasonable. Instead, they offer $350 per hour. (Doc. 34 at 19.)

"Unless manifest injustice would result, the court must require that the party seeking discovery . . . pay the expert a reasonable fee for time spent in responding to discovery." Fed. R. Civ. P. 26(b)(4)(E). Reasonableness in this context is within the court's discretion. *Cruz v. Home Depot, U.S.A., Inc.*, No. 8:11-CV-1264-T-27TBM, 2011 WL 4836239, at *1 (M.D. Fla. Oct. 12, 2011). Courts assessing reasonableness typically considered various factors, including:

> (1) the witness' area of expertise; (2) the education and
> training that is required to provide the expert insight ...
> sought; (3) the prevailing rates of other comparably
> respected available experts; (4) the nature, quality and
> complexity of the discovery responses provided; (5) the fee
> actually being charged to the party who retained the
> expert; (6) fees traditionally charged by the expert on
> related matters; and (7) any other factor likely to be of
> assistance to the court in balancing the interests
> implicated by Rule 26.

*Cartrette v. T & J Transp., Inc.*, No. 3:10-CV-277-J-25MCR, 2011 WL 899523,

at *1 (M.D. Fla. Mar. 15, 2011). Weighing these factors, the Court finds $350

per hour reasonable to accommodate Makkaoui for his deposition testimony.

This is consistent with the hourly rate otherwise charged for Makkaoui's

services. Plaintiffs must prepay him for one hour of his time at this rate, and

any balance owed will be paid at the end of his deposition. *See Cruz*, 2011 WL

4836239, at *2.

Accordingly, it is now **ORDERED**:

1.     Defendant's Motion to Quash Subpoena for Deposition (Doc. 31)

and Makkaoui's Motion to Quash Subpoena (Doc. 32) are **GRANTED in part**

**and DENIED in part** as described above.

2.     Plaintiffs may reset Makkaoui for a Zoom deposition and inquire

into his work before the denial of their claim.

3.     Plaintiffs are **ORDERED** to prepay Makkaoui for the first hour of

his deposition at rate of $350 per hour. They must pay the remaining balance

at this same rate after his deposition.

4.     Defendant's Motion to Quash Subpoena for Deposition (Doc. 31) and Makkaoui's Motion to Quash Subpoena (Doc. 32) are **DENIED** to the extent that they seek any relief different than discussed above.

**ENTERED** in Fort Myers, Florida on September 12, 2023.

Kyle C. Dudek
United States Magistrate Judge

Copies:  All Parties of Record